UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
——————————————————————X

JOHN A. CLIFFORD,

               Plaintiff,                         CV-08-3357 (SJF)(AKT)

   -against-

                                            **OPINION & ORDER**

HOME BOX OFFICE, INC.,

               Defendant.
——————————————————————X

FEUERSTEIN, J.

On April 25, 2008, plaintiff John A. Clifford ("plaintiff")[1] commenced this action against defendant Home Box Office, Inc. ("defendant") in the Supreme Court of the State of New York, County of Nassau, alleging employment discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117; the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297; and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101-131. On August 18, 2008, defendant filed a Notice of Removal to remove the state court action to this Court pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Defendant now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint. For the reasons stated herein, defendant's motion to dismiss is granted.

I.     Background

---

[1] Although plaintiff is proceeding *pro se* in this action, he is an attorney licensed to practice in the State of New York. (Complaint, ¶ 1).

A.    Factual Background[2]

At the time plaintiff commenced this action, he was sixty (60) years old, having been

born on February 15, 1948. (Compl., ¶ 39). From October 28, 1998 through April 2, 2007,

plaintiff was employed by defendant as an investigator in a Manhattan office. (Complaint

[Compl.], ¶¶ 1, 5-6, 35). Plaintiff alleges that beginning in approximately 2004, he was arrested

seven (7) times by the Metropolitan Transportation Authority ("MTA") police during his

commute between his residence in Long Beach and his office in Manhattan as a result of his

"strong stance" against what he believed to be rude behavior by his fellow commuters for "loud

and prolonged talking" on their cell phones. (Compl., ¶¶ 10-11). According to plaintiff,

although all charges were eventually dismissed against him, he utilized all of his vacation time

with defendant and asked his supervisor, Steve Sapienza ("Sapienza"), for additional leave to

make approximately twenty (20) court appearances following the arrests. (Compl., ¶¶ 11-12).

Plaintiff alleges that Sapienza "apparently felt plaintiff's actions were a sign of mental illness

(loose cannon) and arranged to have plaintiff interviewed by Shelly D. Fischel ["Fischel"], the

head of [defendant's] Human Resources department." (Compl., ¶ 13).

Plaintiff alleges that in March 2007, following the interview with Fischel, Sapienza

advised him "that his position was being reorganized and that someone with knowledge of the

internet was being brought in to investigate the unauthorized distribution and sale of

[defendant's] programming via that media." (Compl., ¶ 32). According to plaintiff, he was

---

[2] As is required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, the factual allegations in the complaint, though disputed by defendant, are
accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom
in favor of plaintiff. They do not constitute findings of fact by this court.

advised by Alison Irving, from defendant's Human Resources Department, that he would not be considered for the new investigative position, nor be considered for another position "because of his prior involvement with law enforcement." (Compl., ¶ 33). Plaintiff admits that he accepted the severance package offered by defendant. (Compl., ¶ 33).

Plaintiff alleges that on or about July 25, 2007, he learned that "a younger person with little or no internet investigative experience* * * was hired and was being trained * * * to do the job plaintiff could have been retrained for." (Compl., ¶ 36).

### B. Procedural History

On April 25, 2008, plaintiff commenced this action in the Supreme Court of the State of New York alleging, *inter alia*, that defendant terminated his employment based upon his age and defendant's perception that he was mentally ill. (Compl., ¶¶ 37-38). On August 18, 2008, defendant removed the action to this Court pursuant to 28 U.S.C. § 1331, on the basis that this Court has federal question jurisdiction over plaintiff's ADEA and ADA claims, and pendent jurisdiction over plaintiff's state law claims.

Defendant now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint as barred by the Agreement and Release executed by plaintiff upon the termination of his employment with defendant.

## II. Discussion

### A. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 550 U.S. 544, 127 S.Ct. at 1959. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). "[G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be

considered. * * * Accordingly, '[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" <u>Chambers</u>, 282 F.3d at 153 (quoting <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991)). However, "mere notice or possession" of a document which is not incorporated by reference in the complaint, absent the plaintiff's reliance on the terms and effect thereof, is insufficient. <u>Id.</u>

Although the Separation Agreement ("Agreement") and Release of All Claims ("Release") upon which defendant bases its motion to dismiss are not attached to the complaint, those documents are incorporated by reference into the complaint, insofar as plaintiff specifically refers to the "severance package" he accepted upon his termination, (<u>see</u> Compl., ¶ 33), which encompasses the Agreement and Release. <u>See</u>, <u>e.g.</u> <u>New Image Roller Dome, Inc. v. Travelers Indem. Co. of Illinois</u>, No. 07-5564-CV, 2009 WL 319966, at * 1 (2d Cir. Feb. 10, 2009) (finding that the district court properly considered, *inter alia*, the release agreement to which the plaintiff referred in its complaint). Likewise, the "Home Box Office, Inc. Job Elimination Severance Plan" ("Severance Plan"), which is attached as Exhibit "A" to plaintiff's memorandum of law in opposition to defendant's motion to dismiss ("plaintiff's memorandum"), may arguably be considered part of the "severance package" to which plaintiff refers in paragraph thirty-three (33) of the complaint. Moreover, plaintiff specifically refers to the "HBO Employee Handbook" in his complaint, (<u>see</u> Compl., ¶ 34), which is attached as Exhibit "B" to plaintiff's memorandum of law. Therefore, those documents have been considered on this motion.

To the contrary, the Affidavit of Alison Irving dated September 30, 2008, which is not

attached to the complaint, incorporated by reference therein, or otherwise "integral" to the complaint, has not been relied upon as a basis for the Court's decision on defendant's motion to dismiss. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (finding that the district court's reference to an extrinsic letter attached to the defendant's motion to dismiss was not erroneous because the court did not rely on the letter as a basis for its decision but simply referred to it as background); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999) (holding that a 12(b)(6) motion is not converted into a motion for summary judgment when the court simply refers to supplementary materials, but does not rely on them or use them as a basis for its decision).

B.  Release

Defendant contends that plaintiff's action is barred by the Agreement and Release he executed on March 7, 2007, upon his termination and acceptance of the severance payments and benefits offered by defendant. The Agreement specifically provides that the severance package offered to plaintiff was contingent upon plaintiff's execution of the Release. (See Release, ¶¶ 2(a)(1) and (3); 7). In addition, paragraph ten (10) of the Agreement provides, in pertinent part, as follows:

> You should consult with an attorney * * * before signing this Agreement and the attached Release. You acknowledge that you have carefully read this Agreement and the Release in their entirety and that you fully understand their terms and significance; and that you voluntarily assent to all the terms and conditions contained there, and that you are signing the Agreement and the Release of your own force and will. You have 21 days from the day you receive a copy of this Agreement to sign it. * * * Please also note that you have 7 days after you execute the attached Release to revoke both it and this underlying Agreement * * *."

The Release provides, in pertinent part, as follows:

> In consideration of the payments and other benefits provided to me in the accompanying Agreement dated as of March 5, 2007, *which were not otherwise owed to me*, I, on behalf of myself * * * hereby release [defendant] * * * from any and all claims, demands, and causes of action of any kind I may have, whether known or unknown, including, but not limited to, all claims arising out of my employment with [defendant] or the termination of that employment, including any claim of constructive discharge, age or other discrimination whether under the [ADEA], * * * or otherwise, * * * violation of any federal, state or local law, regulation or order, and all other claims of any kind arising out of my employment * * *. (Emphasis added).
>
> I understand that this Release fully and completely waives and gives up all claims I may have against [defendant], whether known to me or not arising from the beginning of time through the date I execute this release. I also understand that although I am not prohibited from filing a charge against [defendant] with the Equal Employment Opportunity Commission ["EEOC"] or a state or local anti-discrimination agency, * * *, by virtue of this Release I am waiving any right to receive any award, damages or recovery of any kind in connection with any such charge. (Emphasis in original).
>
> I also understand that this Release shall constitute a binding, legal obligation on my part the eighth day after I sign it. I further understand that during the seven (7) day period I have the right to revoke this Release, in which case the Agreement and the Release will be null and void.
>
> * * *
>
> I HAVE READ AND UNDERSTAND THE CONTENTS OF THIS RELEASE. I HAVE BEEN GIVEN ADEQUATE TIME TO REVIEW IT AND TO CONSULT WITH AN ATTORNEY REGARDING ITS PROVISIONS. NO PROMISES OR REPRESENTATIONS OF ANY KIND HAVE BEEN MADE TO ME ABOUT IT. I HAVE EXECUTED IT VOLUNTARILY AND OF MY OWN FREE WILL, WITHOUT COERCION AND WITH FULL KNOWLEDGE OF WHAT IT MEANS TO DO."

Plaintiff contends: (1) that the Release is void as a matter of law because it does not comply with all of the requirements of the Older Workers Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f); (2) that the Release does not cover his ADEA claim, since that cause of

action did not accrue until defendant hired a younger person for his position, which was after the date that the Release was executed; (3) that he was not prohibited from commencing this lawsuit because it is not "an award or recovery" prohibited by the Release; (4) that the Release is retaliatory insofar as it conditioned severance benefits on "retaliatory conditions designed to prevent a legitimate challenge" to its enforceability, (Plaintiff's Memorandum of Law in Opposition [Plf. Mem.], p. 7); (5) that the Release is ambiguous insofar as it permits plaintiff to file a charge with the EEOC, but the Agreement contains a "disguised, covenant not to sue," (Plf. Mem., pp. 8-9); and (6) that there was no "real" consideration for the Release because he received less benefits than he was entitled to under the Plan.

      1.    ADEA Claims

          a.    Compliance with the OWBPA

The OWBPA amended the ADEA to regulate employee waivers and releases under the ADEA. See Powell v. Omnicom, 497 F.3d 124, 131 (2d Cir. 2007). "Under the OWBPA, an individual may waive his rights only if the waiver is 'knowing and voluntary.'" Id. (citing 29 U.S.C. § 626(f)(1)). The OWBPA requires that, at a minimum, the following specific requirements be met in order for an employee waiver to be deemed "knowing and voluntary":

> "(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> (B) the waiver specifically refers to rights or claims arising under [the ADEA];
>
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired; [and]

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-- (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program [hereinafter, 'the informational requirements of the OWBPA']."

29 U.S.C. § 626(f)(1). The failure to meet any of the statutory requirements renders the release unenforceable as against ADEA claims. Powell, 497 F.3d at 131; see also Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427-428, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (holding that a release that does not comply with the stringent requirements of the OWBPA is unenforceable insofar as it purports to waive or release an ADEA claim).

The written Agreement and Release specifically refer to ADEA claims, as well as other causes of action; apply only to claims arising "through the date [plaintiff] execute[d] [the] Release;" advise plaintiff to consult with an attorney prior to executing the Release; and provide

plaintiff with the seven (7) day revocation period required by the OWBPA. Thus, the second, third, fifth and seventh requirements of the OWBPA are satisfied.

i.    Ambiguity

Plaintiff contends that the Agreement contains an implied covenant not to sue, insofar as paragraph nine (9) of the Agreement indicates that the Agreement and Release "may be used as evidence only in a subsequent proceeding in which [defendant] or [plaintiff] allege breach of, or indemnification under, this Agreement or in which [defendant] is relying upon this Agreement or the Release in support of an affirmative defense. This Agreement shall not be filed with a court or used for any other purpose." According to plaintiff, that paragraph of the Agreement is inconsistent with paragraph two (2) of the Release, which permits plaintiff to file a charge with the EEOC, and, thus, the Agreement and Release are ambiguous.

Plaintiff's contention that the Agreement and Release are ambiguous is without merit. "A Covenant not to sue is a formal agreement or promise 'in which a party having a right of action agrees not to assert that right in litigation.'" Ricciardi v. Electronic Data Systems Corp., No. 03-5285, 2007 WL 576323, at * 5 n. 3 (E.D. Pa. Feb. 20, 2007) (quoting Blacks Law Dictionary 369 (7th ed. 1999)). Paragraph nine (9) of the Agreement does not prevent the plaintiff from asserting a right of action in litigation. Rather, that provision merely prohibits plaintiff from using the Agreement and Release as evidence in any action he does commence. Accordingly, unlike the case Syverson v. International Business Machines Corp., 461 F.3d 1147 (9th Cir. 2006) (amended January 3, 2007), upon which plaintiff relies, the Agreement and Release do not use the terms "release" and "covenant not to sue" confusingly. Rather, the Agreement and Release clearly set

10

forth the claims released, i.e., "all claims arising out of [plaintiff's] employment with [defendant] or the termination of that employment, including any claim of constructive discharge, age or other discrimination whether under the [ADEA], the [OWBPA], Title VII of the Civil Rights Act of 1964, or the Sarbanes-Oxley Act of 2002, or otherwise, breach of contract or covenant, negligent or intentional infliction of emotional distress, tort, violation of any federal, state or local law, regulation or order, and all other claims of any kind arising out of [plaintiff's] employment * * *", and the claims not released, i.e., "any claims for payment under the Agreement or for any vested rights [plaintiff] may have in any Benefit Plans," as well as the right to file an EEOC charge. Thus, the Agreement and Release are not ambiguous and are clearly "written in a manner calculated to be understood * * * by the average individual." 29 U.S.C. § 626(f)(1)(A). See, e.g. Riccardi, 2007 WL 576323, at * 5 (finding that the Release was not ambiguous where it clearly set forth the claims released and those not released, it did not use the terms "release" and "covenant not to sue" confusingly, and it clearly indicated that the plaintiff released his right to sue under the ADEA). Therefore, the Agreement and Release satisfy the first requirement of the OWBPA.

ii.     Consideration

Plaintiff also claims that there was no consideration for the Agreement and Release, since he did not give up anything to which he was not already entitled. This contention is likewise without merit. The Severance Plan specifically conditioned eligibility for benefits upon execution of a Separation Agreement and Release, (Severance Plan, ¶ E(2)), and, thus, plaintiff was not entitled to any benefits under the Severance Plan absent execution of the Agreement and

11

Release. See, e.g. Davis v. Eastman Kodak Co., No. 04-CV-6098, 2007 WL 952042, at * 10 (W.D.N.Y. Mar. 29, 2007) (finding that the plaintiffs received adequate consideration for the releases they executed where they received severance benefits pursuant to the defendant's Termination Assistance Plan which conditioned such benefits upon execution of a release, since the plaintiffs were not entitled to any benefits absent such releases). By signing the Release, plaintiff even acknowledged that the severance payments and benefits he received "were not otherwise owed to [him]." As plaintiff does not dispute that he received at least some benefits pursuant to the Plan, i.e., severance pay, there was adequate consideration for the Agreement and Release. See, e.g. Davis, 2007 WL 952042, at * 11 (holding that "as long as an employee receives *some* benefit that is greater than what he was already entitled to, there is consideration.") Accordingly, the Agreement and Release satisfy the fourth requirement of the OWBPA.

### iii.  Provisions Applicable to Group Terminations

Plaintiff conclusorily contends, for the first time in his memorandum, that another employee of defendant was terminated at approximately the same time as he was and, therefore, he was terminated as part of a group termination over which the sixth and eighth provisions of the OWBPA specifically govern and with which defendant failed to comply. Specifically, plaintiff contends that he was not provided with forty-five days (45) to consider signing the Agreement and Release or with the informational requirements of the OWBPA.

Plaintiff's contention may only be sustained if his termination was pursuant to an "exit incentive program" (hereinafter, "EIP") or "other employment termination program" (hereinafter, "other program"). In determining whether plaintiff's termination was part of an EIP or other

12

program, implementing regulations promulgated under the OWBPA by the EEOC, the agency

charged with administering the ADEA, 29 U.S.C. § 628, are instructive. Section

1625.22(f)(1)(iii) provides, in relevant part, as follows:

> "(A) * * * Usually an [EIP] is a voluntary program offered to a group or class of employees where such employees are offered consideration in addition to anything of value to which the individuals are already entitled * * * in exchange for their decision to resign voluntarily and sign a waiver. Usually 'other employment termination program' refers to a group or class of employees who were involuntarily terminated and who are offered additional consideration in return for their decision to sign a waiver.
>
> (B) The question of the existence of a 'program' will be decided based upon the facts and circumstances of each case. A 'program' exists when an employer offers additional consideration for the signing of a waiver pursuant to an exit incentive or other employment termination (e.g., a reduction in force) *to two or more employees*. Typically, an involuntary termination program is a standardized formula or package of benefits that is available to two or more employees, while an [EIP] typically is a standardized formula or package of benefits designed to induce employees to sever their employment voluntarily. In both cases, the terms of the programs generally are not subject to negotiation between the parties.
>
> (C) Regardless of the type of program, the scope of the terms 'class,' 'unit,' 'group,' 'job classification,' and 'organizational unit' is determined by examining the 'decisional unit' at issue. * * *."
>
> * * *

(emphasis added). Since plaintiff's termination was involuntary, the Agreement and Release

clearly were not requested in connection with an EIP. Regardless, the informational

requirements and extended consideration period applicable to either an EIP or other program "are

limited to the decisional unit that applies to the discharged employees." Burlison v. McDonald's

Corp., 455 F.3d 1242, 1247 (11th Cir. 2006).

Section 1625.22(f)(3) provides, in relevant part, as follows:

"(i) * * * (B) * * * A 'decisional unit' is that portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver and those who would not be offered consideration for the signing of a waiver. The term 'decisional unit' has been developed to reflect the process by which an employer chose certain employees for a program and ruled out others from the program."

(ii) (A)* * * When identifying the population of the decisional unit, the employer acts on a case-by-case basis, and thus the determination of the appropriate class, unit, or group, and job classification or organizational unit * * * also must be made on a case-by-case basis. * * *.

* * *

(v) While the particular circumstances of each termination program will determine the decisional unit, the following examples also may assist in determining when the decisional unit is other than the entire facility: * * * (C) A large facility with several distinct functions may comprise a number of decisional units; for example, if a single facility has distinct internal functions with no employee overlap (i.e., manufacturing, accounting, human resources), and the program is confined to a distinct function, a smaller decisional unit may be appropriate.

Plaintiff worked for defendant as an investigator out of a Manhattan office. (Compl., ¶¶ 5-6). According to plaintiff, he was advised by Sapienza that the investigator position he held was being reorganized in order to hire "someone with knowledge of the internet * * * to investigate the unauthorized distribution and sale of [defendant's] programming via that media." (Compl., ¶ 32). Based upon the allegations in his complaint, any purported termination program on the part of defendant was confined to a distinct function, i.e., investigation of the unauthorized distribution and sale of defendant's programming. Thus, the decisional unit applicable to this case would be confined to the division or divisions of defendant's organization which encompassed investigator(s) of unauthorized distribution and sale of defendant's programming and would not encompass, *inter alia*, the entirety of defendant's organization solely because

14

defendant maintained a Severance Plan available to all eligible employees of its organization. The existence of a Severance Plan indicating to what benefits defendant's eligible employees would be entitled in the event they were ever terminated by defendant does not transform an otherwise isolated termination into a group termination requiring defendant, *inter alia*, to provide information regarding all of its employees ever terminated who were eligible for benefits under the Severance Plan. <u>See</u>, <u>e.g.</u> <u>Ricciardi</u>, 2007 WL 576323, at \* 4 (finding, *inter alia*, (1) that since plaintiff's termination was confined in scope and time, i.e., he was terminated as part of a specific reduction in force ("RIF") in a specific year by a specific organization of defendant for specific reasons, defendant was not obligated to provide information about employees who were previously terminated pursuant to the defendant's system-wide Performance Management Process and national rolling RIF; and (2) that the OWBPA does not require an employer to provide system-wide information).

Plaintiff fails to allege in his complaint that defendant offered any of its other employees additional consideration pursuant to its Severance Plan for the signing of an Agreement and Release resulting from the reorganization of its investigative division, nor does he identify any such employee. Accordingly, the requirements of the OWBPA applicable to an EIP or other program are inapplicable to plaintiff's ADEA claim. Since the informational requirements provided by 29 U.S.C. § 626(f)(1)(H) are not applicable, and the Agreement provided plaintiff with at least twenty-one (21) days to consider its provisions, (<u>see</u> Agreement ¶¶ 2(a)(1), 10), the Agreement and Release satisfy the eighth and sixth requirements of the OWBPA, respectively. Since the Agreement and Release meet all of the requirements of the OWBPA, they were knowing and voluntary and, thus, enforceable with respect to plaintiff's ADEA claims.

b.    Accrual of ADEA Claim

Plaintiff contends that regardless of their enforceability, the Agreement and Release do not bar his ADEA claim because that claim did not arise until defendant hired a younger individual to fill the new investigator position, which was after the date he executed the Agreement and Release.  This contention is without merit.

An ADEA claim accrues when the plaintiff discovers that he has been injured, not when he determines that the injury may have been unlawful.  See Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 287-288 (3d Cir. 2003); Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999) (holding that a cause of action accrues under the ADEA on the date the employee is notified of an adverse employment decision); Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 (7th Cir. 1995) (holding that an ADEA cause of action accrues when the plaintiff discovers that he has been injured, not when he determines that the injury was unlawful); Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995) (holding that an ADEA cause of action accrues when the adverse employment action is communicated to the plaintiff); see also Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that a discrimination claim accrues on the date the plaintiff receives notice of the allegedly discriminatory decision, not from the date the decision takes effect); Paneccasio v. Unisource Worlwide, Inc., 532 F.3d 101, 112 (2d Cir. 2008) ("ADEA time periods ordinarily start running upon the employer's commission of a discriminatory act.").  Plaintiff's alleged injury was the termination of his employment.  Thus, plaintiff's ADEA claim arose when he was notified of the decision to terminate his employment, which was prior to his execution of the Agreement and Release, not when he discovered that the reason behind his termination may have been

16

discriminatory.[3]

c.      Right to File EEOC Charge

Plaintiff contends that the Release does not bar the instant action in light of the following language contained therein:

> "I also understand that although I am not prohibited from filing a charge against [defendant] with the [EEOC] * * *, by virtue of this Release I am waiving any right to receive any award, damages or recovery of any kind in connection with any such charge."

Plaintiff's contention that since this action is not an "award, damages or recovery," and the Release does not otherwise contain a covenant not to sue, this action is not prohibited by the Release, is disingenuous. By executing the Release, plaintiff clearly released defendant "from any and all claims, demands, and causes of action of any kind * * *, including, but not limited to, all claims arising out of [his] employment with [defendant] or the termination of that employment, * * *" and waived "all claims" plaintiff had against defendant through the date the Release was executed. (Emphasis in original). The language reserving plaintiff's right to file a charge with the EEOC is mandated by the OWBPA's prohibition against waivers of the right to file an EEOC charge, 29 U.S.C. § 626(f)(4) ("No waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission"), and does not vitiate plaintiff's release of all claims.

---

[3] Although plaintiff additionally alleges that defendant's actions violated the policies outlined in its employee handbook and the ADA, he does not allege that those causes of action accrued after he executed the Agreement and Release. For the reasons set forth below, those claims are barred by the Agreement and Release.

Indeed, some courts have held that any release or waiver of the right to file a discrimination charge with the EEOC is void and unenforceable. See Richardson v. Commission on Human Rights and Opportunities, 532 F.3d 114, 121 (2d Cir. 2008) (recognizing that some Circuits have forbidden any release or waiver of the right to file a charge with the EEOC); EEOC v. SunDance Rehabilitation Corp., 466 F.3d 490, 498 (6th Cir. 2006) (citing cases holding that prohibitions on filing charges with the EEOC are void and unenforceable as against public policy). This is so because "[t]he purpose of a charge [with the EEOC] is not to seek recovery from the employer but rather to inform the EEOC of possible discrimination. * * * Allowing the filing of charges to be obstructed by enforcing a waiver of the right to file a charge could impede EEOC enforcement of the civil rights laws." EEOC v. Cosmair, Inc., L'Oreal Hair Care Div., 821 F.2d 1085, 1090 (5th Cir. 1987); see also SunDance, 466 F.3d at 499 ("the filing of charges and participation by employees in EEOC proceedings are instrumental to the EEOC's fulfilling its investigatory and enforcement missions."). Although a waiver of the right to file a discrimination charge with the EEOC is prohibited, a waiver of the right to recover in a lawsuit against one's employer is not. See Cosmair, 821 F.2d at 1091.

### d. Retaliation

Plaintiff contends that the Agreement and Release are retaliatory because they conditioned receipt of severance benefits upon their execution and the Agreement includes a provision that it "shall not be filed with a court or used for any other purpose," thereby preventing any legitimate challenge to its enforcement. This contention is without merit.

In order to constitute retaliation, the employment benefits withheld by the employer

18

absent a release must have been an amount already promised or owed to terminated employees. See, e.g. EEOC v. Nucletron Corp., 563 F.Supp.2d 592, 600 (D. Md. 2008) (holding that if the severance benefit offered was not otherwise promised or owed to the plaintiff, then the defendant took no retaliatory adverse action by refusing to provide the benefit to the plaintiff absent execution of a release). As noted above, plaintiff was not entitled to receipt of any severance pay or benefits; the award of severance pay and benefits was a privilege, not a right. Plaintiff even acknowledged as such by signing the Release, which clearly indicates that the benefits received by him were not otherwise owed to him. Thus, defendant's condition of receipt of severance pay or benefits not otherwise owed to plaintiff upon execution of the Agreement and Release was not an adverse employment action and, therefore, was not retaliatory. See, e.g. Matya v. Dexter Corp., No. 97-CV-763C, 2006 WL 931870, at * 15 (W.D.N.Y. Apr. 11, 2006) (finding that the conditioning of severance pay and outplacement counseling services on the plaintiff's agreement to execute a release was not retaliatory, since the plaintiff was not otherwise entitled to such benefits), aff'd, 250 Fed.Appx. 408 (2d Cir. Oct. 12, 2007); Jackson v. Lyons Falls Pulp & Paper, Inc., 865 F.Supp. 87, 95 (N.D.N.Y. 1994) (finding that the plaintiff could not establish a prima facie case of retaliation for the defendant's refusal to grant him severance pay and benefits because plaintiff was not entitled to receive severance pay and benefits absent his execution of a Separation Agreement).

Plaintiff's reliance on EEOC v. Lockheed Martin, 444 F.Supp.2d 414 (D. Md. 2006), is misplaced. In that case, the employer conditioned the plaintiff's receipt of severance benefits on the plaintiff's withdrawal of a charge she had already filed with the EEOC, as well as on her execution of a release. Unlike the receipt of severance benefits, which is a privilege rather than a

right, the opportunity to file a charge of discrimination with the EEOC is a statutory right that is not subject to waiver. As noted above, the Agreement and Release at issue in this case did not prohibit plaintiff from filing a charge with the EEOC and, thus, did not compel plaintiff to waive any right to which he was entitled. Accordingly, the defendant's contingency of severance pay and benefits on execution of the Agreement and Release was not retaliatory.

### 2. Non-ADEA Claims

Since the Agreement and Release meet the exacting requirements of the OWBPA, they are also knowing and voluntary under the less stringent "totality of circumstances" standard established by the Second Circuit in Bormann v. AT&T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989), and applicable to plaintiff's remaining claims.[4] See, e.g. Sheridan v. McGraw-Hill Companies, Inc., 129 F.Supp.2d 633, 639 (S.D.N.Y. 2001), aff'd, 24 Fed.Appx. 64 (2d Cir. 2001)(granting summary judgment dismissing the plaintiff's state and municipal claims since the waiver of the plaintiff's ADEA claims met the more stringent requirements of the OWBPA); see also Bachiller v. Turn on Products, Inc., No. 00 Civ. 8701, 2003 WL 1878416, at * 4 (S.D.N.Y. Apr. 14, 2003), aff'd, 86 Fed.Appx. 465 (2d Cir. Feb. 3, 2004) (finding that since

---

[4] Under the "totality of circumstances" standard, in deciding whether a waiver of claims was knowing and voluntary, the court should consider: (1) the plaintiff's education and business experience; (2) the length of time the plaintiff has possession of, or access to, the release prior to signing it; (3) the plaintiff's role in deciding the terms of the release; (4) the clarity of the release; (5) whether the plaintiff consulted an attorney; (6) whether the consideration received by the plaintiff in exchange for the waiver exceeds benefits to which the employee was already entitled by contract or law; (7) whether the employer encouraged the employee to consult an attorney; and (8) whether the employee was provided a fair opportunity within which to consult an attorney. Bormann, 875 F.2d at 403. All of these factors were necessarily considered in deciding whether the Agreement and Release complied with the statutory requirements of the OWBPA.

the plaintiff waived her non-ADEA federal claims under the "totality of circumstances" standard, which is "somewhat more stringent than" the standard generally applicable under New York contract law, she also waived her state and municipal claims). Accordingly, the Agreement and Release are enforceable with respect to plaintiff's remaining claims.

### C.     Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure states that a party should be "freely" given leave to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent a showing of undue delay, bad faith or dilatory motive on the part of the plaintiff, undue prejudice to the defendant, or the futility of the amendment, a plaintiff should be granted leave to replead upon granting a motion to dismiss. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, if amendment would be futile, i.e., if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

Plaintiff's contention that his termination was part of a group termination is the only contention rejected based upon deficient pleading. Plaintiff's remaining contentions constitute legal defects which cannot be cured by repleading. Nonetheless, it is clear from the submissions on the motion, particularly plaintiff's memorandum in opposition and the Irving Affidavit[5], that any amendment would be futile. The only basis for plaintiff's contention that his termination

---

[5] Although the Irving Affidavit was not considered as a basis for dismissal of the complaint, it is properly considered as background, see Mangiafico, 471 F.3d at 398; Hayden, 180 F.3d at 54, to ascertain the futility of any amendment. See, e.g. Nealy v. Berger, No. 08-CV-1322, 2009 WL 704804, at * 11 n. 10.

qualifies as a group termination is that "[u]pon information and belief, [defendant] has terminated numerous employees through the [Severance] Plan both before and after plaintiff," and that "another attorney working in plaintiff's department [was] terminated at the same time [as plaintiff]." (Plf. Mem., p. 4). However, for the reasons stated above, the fact that other employees in defendant's organization were terminated pursuant to the Severance Plan "both before and after plaintiff" does not qualify plaintiff's termination as a group termination, since the decisional unit applicable to plaintiff's claims is only the division or divisions of defendant's organization which investigates the unlawful distribution and sale of defendant's programming. Moreover, the only other employee to which plaintiff refers as being part of his purported group termination was part of a separate division with a different function as plaintiff's former division, was terminated by a different supervisor, and was terminated because her position was eliminated due to lack of work, not because of a reorganization of her position. (Irving Aff., ¶¶4-7). Accordingly, that employee was not part of the same decisional unit as plaintiff. Since plaintiff cannot establish that the termination of his employment was part of a group termination, and the Agreement and Release are otherwise valid and enforceable for the reasons set forth herein, plaintiff cannot state a viable cause of action that is not barred by the Agreement and Release. Thus, any amendment would be futile.

Since even a liberal reading of the complaint and supplemental materials does not give any indication that a valid claim can be stated that is not barred by the Agreement and Release, the complaint is dismissed with prejudice.

III. Conclusion

For the reasons stated herein, defendant's motion to dismiss is granted and the complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to enter judgment in favor of defendant and to close this case.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 18, 2009
     Central Islip, N.Y.

Copies to:

John A. Clifford, *pro se*
370 W. Broadway, Suite 5W
Long Beach, New York 11561

Proskauer Rose LLP
1585 Broadway
New York, New York 10036-8299
Attn:  Steven D. Hurd, Esq.
       Susan D. Friedfel, Esq.